UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――

JD2 ENVIRONMENTAL, INC.,

                              Plaintiff,

                v.

ENDURANCE AMERICAN INSURANCE
COMPANY,

                              Defendant.

14-CV-8888 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

       Plaintiff JD2 Environmental, Inc. ("JD2") filed this action against Defendant Endurance American Insurance Company ("Endurance") seeking a declaration that JD2 is an additional insured under an insurance policy issued by Endurance, such that Endurance's refusal to defend JD2 in a separate action constitutes breach of contract. (Dkt. No. 1 ¶ 21-36)  JD2 also alleges that Endurance's delay in denying coverage to JD2 constitutes breach of the covenant of good faith and fair dealing. (*Id.* ¶ 37-43.)

       The parties each move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the question whether Endurance breached its duty to defend JD2. (*See* Dkt. No. 28; Dkt. No. 32.)  Endurance also moves for summary judgment on the question whether, under New York law, JD2 can maintain its claim for breach of the covenant of good faith and fair dealing. (*See* Dkt. No. 33 at 15.)  For the reasons that follow, the Court grants JD2's motion for summary judgment that Endurance breached its duty to defend. The Court also grants Endurance's motion for summary judgment that JD2 cannot maintain its claim for breach of the covenant of good faith and fair dealing/bad faith under New York law.

1

I.      Background

The following facts are taken from the parties' 56.1 statements and summary judgment briefing and are undisputed unless otherwise noted.[1]

A.      The Avis Action

JD2 is an environmental consulting engineering firm with expertise in underground storage tank ("UST") systems. (Dkt. No. 37 ¶ 3.) Avis Budget Car Rental, LLC ("Avis") contracted with JD2 to provide engineering services for the replacement of the UST systems at its location at John F. Kennedy International Airport in Queens, New York ("JFK"). (*Id.* ¶ 4.) JD2 retained Gemstar Construction Corporation ("Gemstar"), a subcontractor, to perform the physical replacement of the UST system. (*Id.* ¶ 5; Dkt. No. 39 ¶ 1.)

On December 15, 2011, while Gemstar was excavating at the JFK construction site, it encountered an obstruction while driving sheet piles approximately seventeen feet below grade. (Dkt. No. 39 ¶ 6 (citing First Amended Complaint, *Avis Budget Car Rental, LLC v. JD2 Envtl., Inc., et al.*, No. 12 Civ. 5010 (E.D.N.Y May 31, 2013), Dkt. No. 41 ¶ 24 ("Avis FAC")[2]).) At

---

[1] In its reply brief on summary judgment, Endurance moves to strike JD2's Rule 56.1(B) statement for failure to comply with the Court's local rules. (Dkt. No. 47 at 11-16.) "[T]he purpose of Local Rule 56.1 is to assist the Court in understanding the scope of the summary judgment motion by highlighting those facts which the parties contend are in dispute." *Rodriguez v. Schneider*, No. 95 Civ. 4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999). The Rule 56.1 statement "should contain factual assertions, with citation to the record" and not legal conclusions and argument also found in the memoranda of law. *Id.*; *see* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 56.1 (Dec. 19, 2016), http://www.nysd.uscourts.gov/rules/rules.pdf. To the extent, therefore, that the Rule 56.1 statements in this case contain improper legal arguments, conclusions, and citations, the Rule 56.1 statements are deemed improper. The Court relies exclusively on the parties' memoranda of law for such arguments. *See, e.g.*, *Valade v. City of N.Y.*, 949 F. Supp. 2d 519, 521 n.1 (S.D.N.Y. 2013) (noting that a Rule 56.1 statement "does not conform" to the local rule where the statement, among other things, "contains extensive and unhelpful citation to case law").

[2] The Avis FAC is attached as Exhibit A to the complaint in this action. (Dkt. No. 1 Ex. A.)

the time, Gemstar believed the obstruction to be a naturally occurring object, such as a tree stump or a boulder. (*Id.*) Without investigating the exact nature of the obstruction, Gemstar resumed excavation the next day. (*Id.* ¶ 7-8.) On December 16, 2011, Gemstar struck the same underground obstruction, which was in fact a sewer line, creating a sinkhole in which water was observed. (*Id.* ¶ 8.) Avis filed suit against JD2 and Gemstar to recover the cost of the repair to the damaged sewer line. (*Id.* ¶ 9 (citing Avis FAC ¶ 28-30).)

Avis filed suit in the Eastern District of New York against JD2 and Gemstar (and another party not implicated in the present case) for recovery of the cost of the repair of the damaged sewer line (the "Avis Action"). *See* Avis FAC. The pending motions in this case concern whether Endurance has a duty to defend JD2 in the Avis Action, which depends on the contractual relationships between the parties.

**B.     The Endurance Policy and Endurance's Refusal to Defend or Indemnify**

Endurance issued to Gemstar an insurance policy covering the period from October 1, 2011, to April 1, 2013. (Dkt. No. 29 Ex. 10 ("Policy").) The Policy contains a Commercial General Liability Coverage Part ("CGL") and a Contractors Pollution Liability Coverage Part ("CPL"). (*Id.* at EAIC 3479.) The Policy provides additional insured coverage[3] under two inclusion provisions relevant to this action: Endorsement Number 5 (*id.* at EAIC 3542), which modifies both the CGL and CPL, and Endorsement Number 23 (*id.* at EAIC 3577), which modifies only the CGL. If JD2 is an additional insured under either the CGL or the CPL, Endurance's duty to defend is triggered. The parties debate whether JD2 is an additional insured pursuant to either provision.

---

    [3]    An additional insured is "[s]omeone who is covered by an insurance policy but who is not the primary insured." Black's Law Dictionary (10th ed. 2014).

Endurance points to two provisions under which an additional insured may be excluded from coverage under the Policy: Endorsement Number 23 (which, as noted, also contains an inclusion provision); and Endorsement Number 11 (*id.* at EAIC 3548) (which modifies only the CGL). Endurance also argues that JD2 is excluded from coverage under the CPL as the Avis Action is outside the scope of the CPL. To prevail, Endurance must show either (1) that JD2 is not entitled to coverage under Endorsement Numbers 5 and 23, or (2) that JD2 is nevertheless excluded from coverage under the CGL (through Endorsement Numbers 23 and 11) and CPL (as outside its scope).

Based on its reading of the Policy, JD2 demanded defense and indemnification from Gemstar, and therefore Endurance, on March 12, 2012, and again on January 10, 2013.[4] (Dkt. No. 39 ¶ 13.) On June 6, 2014, more than two years later, Endurance replied, denying coverage to JD2 and refusing to defend or indemnify JD2 in the Avis Action. (*Id.* ¶ 14.) JD2 is defended in the Avis Action by another insurer, Ironshore Specialty Insurance Co. ("Ironshore"), though JD2 notes that its policy with Ironshore is subordinate to the primary coverage it argues Endurance is required to provide. (Dkt. No. 37 ¶¶ 23, 89-90.)

After setting forth the legal framework necessary to resolve the current dispute, the Court turns to each of the Policy provisions at issue. The Court then addresses Endurance's arguments that the CPL does not apply because the Avis Action does not fall within its scope and that JD2's claim for breach of the covenant of good faith and fair dealing/bad faith cannot be maintained under New York law.

---

[4] Because the liability issues remain unresolved in the Avis Action, any indemnity determination by the Court at this time would be premature.

4

**II.     Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Subject matter jurisdiction in this case is based on the diversity statute, 28 U.S.C. § 1332.[5]  Accordingly, the Court applies "the choice of law rules of New York, the forum State." *Aetna Cas. & Sur. Co. v. Gen. Time Corp.*, 704 F.2d 80, 82 (2d Cir. 1983); *see also Klaxon Co. v. Stenor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  "New York law governs this dispute because it requires this Court to determine the obligations of an insurer with respect to the liability of New York insureds arising out of an accident occurring in New York." *U.S. Underwriters Ins. Co. v. 203-211 W. 145th St. Realty Corp.*, No. 99 Civ. 8880, 2001 WL 604060, at *3 (S.D.N.Y. May 31, 2001).

Under New York law, an insurer's duty to defend is "exceedingly broader" than its distinct duty to indemnify.  *Md. Cas. Co. v. Cont'l Cas. Co.,* 332 F.3d 145, 160 (2d Cir. 2003). In assessing whether an insurance company has a duty to defend an insured, "courts first look to 'the allegations within the four corners of the underlying complaint,'" which in this case is the

---

[5] JD2 is a Pennsylvania corporation with its principal place of business in Pennsylvania; Endurance is an insurance carrier conducting business in New York with offices located in Manhattan. (Dkt. No. 1 ¶¶ 3-4.)  The parties confirmed by representation in a telephone conference with the Court on February 24, 2017, that Endurance is incorporated in Delaware and has its principal place of business in New York.  Therefore there is complete diversity of citizenship.  The amount in controversy exceeds $75,000.  (Dkt. No. 1 ¶ 1.)

5

Avis FAC. *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F. Supp. 2d 502, 506 (S.D.N.Y. 2010) (quoting *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (N.Y. 1997)). However, even if the explicit language of the complaint does not trigger the duty to defend, "courts must also look beyond the four corners of the complaint to determine whether there is any potentially covered occurrence." *Id.* (citing *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65-66 (N.Y. 1991)); *see also Park Place Entm't Corp. v. Transcontinental Ins. Co.*, 225 F. Supp. 2d 406, 410 n.2 (S.D.N.Y. 2002) (acknowledging New York Court of Appeals' holding that "courts are to look beyond the four corners of the complaint to determine whether there is any potentially covered occurrence" to prevent an insurer from using "a third party's pleadings as a 'formal fortress' to avoid its contractual duty to defend its insured" (quoting *Fitzpatrick*, 78 N.Y.2d at 68)). Whenever "the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased," an insurer's duty to defend is triggered. *Avondale Indus. v. Travelers Indem. Co.*, 887 F.2d 1200, 1204 (2d Cir. 1989). "Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 80 A.D.2d 292, 294, 439 N.Y.S.2d 10 (N.Y. App. Div. 1st Dep't 1981)).

To the extent an insurer invokes an exception to the insurance policy, which would allow it to avoid defending the insured, the insurer must show that the allegations in the underlying complaint fall "*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 312 (N.Y. 1984) (quoting *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325 (N.Y. 1974)). That is to say, "if any of the claims against the insured arguably arise from covered events, the

insurer is required to defend the entire action." *Frontier*, 91 N.Y.2d at 175; *see also Hotel Des Artistes, Inc. v. Transamerica Ins. Co.*, No. 93 Civ. 4563, 1994 WL 263429, at *3 (S.D.N.Y. June 13, 1994) (Sotomayor, J.) ("[E]ven if only a single claim in the underlying complaint potentially falls within the indemnity coverage of the policy, the insurer must defend the entire action."). As such, "[a]n insurer seeking to avoid its duty to defend bears a heavy burden, which, in practice, is rarely met." *Hotel Des Artistes*, 1994 WL 263429, at *3.

**III.    Discussion**

Three provisions of the Policy are relevant to the present motions for summary judgment: Endorsement Numbers 5, 11, and 23. Endorsement Number 5, which applies to both the CPL and CGL, provides a requirement for finding JD2 covered by the Policy (thereby triggering Endurance's duty to defend): namely, that JD2 is vicariously liable for Gemstar's negligent acts. Endorsement Number 23, which applies to the CGL, is another provision under which JD2 may be classified an additional insured under the contract. Endorsement Numbers 11 and 23 provide exceptions to coverage under the CGL that Endurance argues apply to the current situation. Each provision is discussed before the Court turns to two additional argument made by Endurance: whether the Avis Action falls within the scope of the CPL and whether New York law allows JD2 to maintain an action for bad faith denial of insurance.

    **A.    Endorsement Number 5**

The first path to coverage for JD2 under the Policy is as an additional insured as defined by Endorsement Number 5, "Automatic Additional Insured—Owners, Lessees or Contractors." (Policy at EAIC 3542.) By its terms, Endorsement Number 5 modifies insurance provided under the CGL and CPL as follows:

>    Name of Person or Organization:
>
>    > Any person(s) or organization(s) whom the *Named Insured* agrees, in a written contract, to name as an additional insured. However, this status exists only for the project specified in that contract.
>
>    > The person or organization shown in this Schedule is included as an insured, *but only with respect to that person's or organization's vicarious liability arising out of your ongoing operations performed for that insured*.

(*Id.* (emphasis added).) Thus, in order to be covered as an additional insured under this provision, JD2 must be (1) an additional insured as provided in a written contract with the named insured—Gemstar—that specifies the project underlying the Avis Action, and (2) vicariously liable for the acts of Gemstar in the Avis Action.

There is no dispute that the first condition is met. (*See* Dkt. No. 37 ¶ 9; Dkt. No. 39 ¶ 12.) Gemstar, the named insured, agreed in a written contract to name JD2 as an additional insured for the project in question. (Dkt. No. 29, Ex. 11; Dkt. No. 37 ¶ 9; Dkt. No. 39 ¶ 12.) Indeed, in an Order on summary judgment in the Avis Action, Judge Chen found that the 2009 subcontract between JD2 and Gemstar "applies to the Project" in the Avis Action and "required Gemstar to name JD2 as an additional insured." *Avis Budget Car Rental, LLC v. JD2 Envtl., Inc.*, No. 12 Civ. 5010, 2016 WL 3251394, at *15, *17 (E.D.N.Y. June 13, 2016).

The applicability of Endorsement Number 5 to JD2 as an additional insured under the Policy hinges, therefore, on whether the Avis Action includes potentially covered claims for JD2's "vicarious liability arising out of [Gemstar's] ongoing operations performed for [JD2]." (Policy at EAIC 3542.)

The Court looks to the Avis Action to determine if "the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased," triggering Endurance's duty to defend JD2. *Avondale Indus.*, 887 F.2d at 1204. The Court looks

8

"beyond the four corners of the complaint to determine whether there is any potentially covered occurrence." *Westport Ins. Corp.*, 746 F. Supp. 2d at 506.

In the Avis Action, vicarious liability—"the imputation of liability to [JD2] for [Gemstar's] fault, based on defendant's relationship with the wrongdoer," *Kavanaugh v. Nussbaum*, 71 N.Y.2d 535, 546 (N.Y. 1988)—is a potential basis for JD2's liability.  JD2's potential vicarious liability for Gemstar's allegedly negligent acts is made clear (1) in Judge Chen's summary judgment order, which explicitly leaves open the possibility that JD2 may be found vicariously liable for Gemstar's actions at trial, and (2) in the Avis FAC, which alleges a relationship between JD2 and Gemstar that could give rise to *respondeat superior* liability and alleges that JD2 is liable for at least one act undertaken exclusively by Gemstar.[6]  The fact that the complaint in the Avis Action does not reference vicarious liability explicitly does not change this conclusion.  (*See* Dkt. No. 30 at 6; Dkt. No. 33 at 7-8.)  *See Westport Ins. Corp.*, 746 F. Supp. 2d at 508 ("It is well settled that labels placed on allegations are not controlling.  It matters not what name a plaintiff gives to its cause of action: the substance of the factual allegations overrides the form.").

First, in her order on summary judgment, Judge Chen discussed the indemnification provision of the 2009 subcontract between JD2 and Gemstar.  *Avis*, 2016 WL 3251394, at *15–*16.  In relevant part, Gemstar argued, citing Section 5-322.1 of New York's General Obligations Law ("GOL § 5-322.1"), that JD2 was not entitled to an order of indemnity at the

---

[6] JD2 also argues that it remains potentially vicariously liable under three exceptions to "[t]he general rule . . . that a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts." *Kleeman v. Rheingold*, 81 N.Y.2d 270, 273 (1993).  It also argues that the Avis FAC contains allegations that imply that JD2 is liable for actions taken exclusively by Gemstar.  (*See* Dkt. No. 30 at 7.)  Because JD2 remains potentially vicariously liable under the theories discussed above, the Court declines to resolve these alternative bases.

summary judgment stage because "JD2 cannot be indemnified for its own negligence." [7] *Id.* at *15; *see* GOL § 5-322.1. However, Judge Chen held that, "if only Gemstar, and not JD2, is found to be at fault, then GOL § 5-322.1 would not bar JD2 from being indemnified by Gemstar pursuant to the 2009 Subcontract." *Id.* In that case, Gemstar would be indemnifying JD2 for JD2's vicarious liability to Avis for Gemstar's negligent acts. This is exactly the sort of "potentially covered occurrence" that triggers an insurer's duty to defend. *Westport Ins. Corp.*, 746 F. Supp. 2d at 506.

Second, the Avis FAC alleges facts sufficient to support a finding at trial that JD2 is vicariously liable for Gemstar's negligent acts under the theory of *respondeat superior*. "[T]he question of whether or not an agency relationship exists that is sufficient to bind the principal for the acts of the agent is 'very fact-specific, and no bright-line rules control.'" *Wood v. Mustang Exp. Trucking, Inc.*, No. 00 Civ. 6433, 2007 WL 655624, at *2 (W.D.N.Y. Feb. 26, 2007) (quoting *Murray Hill Films, Inc. v. Martinair Holland, N.V.*, 1987 WL 14918 (S.D.N.Y. July 17, 1987)). "The mere fact that a contract designates [Gemstar] as an independent contractor is not dispositive of the issue" of *respondeat superior* liability. *Gallagher ex rel. Gallagher v. Houlihan Lawrence Real Estate*, 259 A.D.2d 853, 853 (N.Y. App. Div. 3d Dep't 1999). Instead, courts look for "the existence of a right of control over the agent in respect of the manner in which his work is to be done." *In re Morton,* 284 N.Y. 167, 172 (N.Y. 1940).

Here, the Avis FAC contains allegations that would support a finding of vicarious liability under the theory of *respondeat superior*. Avis alleges that JD2 was negligent for failing

---

[7] GOL § 5-322.1 provides that an "agreement . . . relative to the construction, alteration, repair or maintenance of a building, structure, [etc.] . . . purporting to hold harmless the promisee against liability for damage . . . caused by or resulting from the negligence of the promisee . . . is against public policy and is void and unenforceable." Put simply, Gemstar is not contractually obligated to indemnify JD2 for its independent negligence.

to properly and adequately oversee the excavation work, which was done exclusively by Gemstar. (Avis FAC ¶ 40(g)-(h) (alleging a breach of express warrants against JD2 for "[f]ailing to properly and adequately oversee the excavation work at the subject premises" and "[v]iolating applicable codes, standards and/or regulations concerning the proper performance of excavation work").) Furthermore, Avis alleges that Gemstar operated "under the direction and oversight of JD2."[8] (*Id.* ¶ 28.) The Avis FAC plausibly alleges a relationship between JD2 and Gemstar sufficient to create potential vicarious liability for JD2 under *respondeat superior*, which would trigger Endurance's duty to defend.[9] *See Frontier*, 91 N.Y.2d at 175 ("[I]f any of the claims

---

[8] In its motion for summary judgment before Judge Chen, Avis further acknowledged that JD2 "[w]as responsible to ensure that Gemstar complied with all applicable rules and regulations. . . . Yet, JD2 was not onsite when Gemstar . . . violated most of its statutory obligations as an excavator, including through backfilling the sinkhole that appeared on December 15." (Dkt. No. 29, Ex. 9, at 16-17.) This further supports the Court's conclusion that JD2 may be found vicariously liable under a *respondeat superior* theory.

[9] Endurance does not respond to JD2's specific argument regarding *respondeat superior*, which is made both in JD2's motion for partial summary judgment (Dkt. No. 30, at 8-9), and in its opposition to Endurance's motion for partial summary judgment (Dkt. No. 36, at 11-12). Endurance's reliance on three New York state court decisions does not undermine the Court's determination in the present case. Endurance cites *N. Kruger, Inc. v. CNA Ins. Co.*, 242 A.D.2d 566 (N.Y. App. Div. 2d Dep't 1997), for the proposition that "where an additional insured endorsement [in an insurance policy] only provides for coverage for 'vicarious liability' for the work of the named insured, such coverage is narrower than 'arising out of' additional insured coverage." (Dkt. No. 33 at 8.) Endurance cites *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473 (N.Y. App. Div. 1st Dep't 2013), to argue that there is no duty to defend an alleged additional insured where the underlying complaint does not allege that the additional insured is vicariously liable for the named insured's actions. (Dkt. No. 33 at 8.) Finally, Endurance cites *Wilson Cent. Sch. Dist. v. Utica Mut. Ins. Co.*, 123 A.D.3d 920 (N.Y. App. Div. 2d Dep't 2014), for the proposition that, where the underlying complaint seeks to hold the alleged additional insured liable for its own action, not vicariously liable for the actions of the named insured, the insurance policy did not apply to the additional insured. (Dkt. No. 33 at 9.) None of these cases is in conflict with the Court's conclusion that, in the present case, the Avis Action creates the potential for a finding of vicarious liability against JD2 for Gemstar's actions. The cases upon which Endurance relied notably lack such a conclusion.

11

against the insured arguably arise from covered events, the insurer is required to defend the entire action."").

As such, the Court finds that Endurance breached its duty to defend JD2 in the Avis Action under Endorsement Number 5. This does not end the inquiry, however. The Court next turns to the exclusion provisions of the Policy to determine whether JD2 is nevertheless excluded from coverage.

### B.     Endorsement Number 23

Endorsement Number 23 is another provision—in addition to Endorsement Number 5—under which JD2 may be entitled to coverage as an additional insured under the CGL. It also contains an exclusion provision that Endurance argues applies to JD2. For the reasons explained below, the Court concludes that the CGL, pursuant to Endorsement Number 23, does not cover JD2. Regardless, JD2 remains covered under the CPL pursuant to Endorsement Number 5.

Endorsement Number 23 provides:

> **A. Section II – Who is An Insured** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. . . .
>
> **B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> > **a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering, or the failure to render, any professional architectural, engineering or surveying services, including:

> **(1)** The preparing, approving, or failing to prepare or approve, maps, show drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
>
> **(2)** Supervisory, inspection, architectural or engineering activities.

(Policy at EAIC 3577.)

There is no dispute either that (1) in the 2009 subcontract, Gemstar named JD2 as an additional insured or that (2) Avis's claims arise out of Gemstar's ongoing operations performed for JD2 pursuant to the 2009 subcontract. (*See* Dkt. No. 29, Ex. 11; Dkt. No. 37 ¶ 9; Dkt. No. 39 ¶ 12.) *Avis Budget Car Rental, LLC*, 2016 WL 3251394, at *15-*17. Endurance instead seeks to rely on the "professional . . . services" exclusion contained in this provision to demonstrate that JD2 is not covered under the CGL. Endurance argues that "JD2's engineering services fall squarely within the definition of 'professional services.'" (Dkt. No. 33 at 12 (discussing the exception in the context of Endorsement Number 11, which contains the same professional services exclusion language as Endorsement Number 23).)

To carry its burden, Endurance must show that the allegations in the underlying complaint fall "*solely* and *entirely* within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *Seaboard*, 64 N.Y.2d at 312 (quoting *Int'l Paper*, 35 N.Y.2d at 325). Here, the Court agrees with Endurance that the allegations in the Avis FAC fall exclusively within the professional services exclusion policy. As such, JD2 is not covered by the CGL, to which Endorsement Number 23 applies—but this does not affect the Court's conclusion that JD2 is covered under the CPL pursuant to Endorsement Number 5, discussed above.

JD2 points to three allegations in the Avis FAC that it argues are outside of the scope of Endorsement Number 23's exclusions: (1) JD2 failed to communicate with the appropriate

persons to determine the location of the underground sewer line after encountering the obstruction (Avis FAC ¶ 49(d)); (2) JD2 failed to retain competent and qualified contractors to perform excavation work (*id.* ¶ 49(f)); and (3) JD2 violated "applicable codes, standards and/or regulations concerning the proper performance of excavation work and the identification of underground utilities" (*id.* ¶ 49(h)). (*See* Dkt. No. 30, at 17-18.) It strains credulity to view these allegations as outside the scope of the professional services exclusion provision of Endorsement Number 23. Each relates directly to a claim against JD2 for "'property damage' . . . arising out of the rendering, or the failure to render . . . [s]upervisory, inspection, architectural or engineering activities." (Policy at EAIC 3577.)

The Court therefore concludes that Endurance is entitled to summary judgment that JD2 is not entitled to coverage as an additional insured under the CGL pursuant to the exclusion provision of Endorsement Number 23.[10] Though Endurance prevails on its argument that JD2 is not covered by the CGL, Endurance must also prevail on its argument, discussed below, that the Avis Action is beyond the scope of the CPL.

---

[10] Endorsement Number 11 (Policy at EAIC 3548), like Endorsement Number 23, provides an exclusion provision applicable to the CGL. Though the Court concludes that Endorsement Number 23 works to exclude JD2 from coverage under the CGL, Endorsement Number 11 is briefly addressed as an alternative basis. This provision excludes coverage for "property damage," if the property damage arises out of "the rendering of or failure to render" professional services by "*you* or . . . on *your* behalf." As JD2 points out, "you" in the provision refers to the named insured: Gemstar. (*See* Dkt. No. 30, at 15.) *See First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, 48 F. Supp. 3d 158, 174 n.20 (D. Conn. 2014) (interpreting "you" to refer to named insured in professional liability exclusion for injury "arising out of the rendering of or failure to render any professional services by you or on your behalf"). Because the record does not support a conclusion that Avis's claims arise out of Gemstar's performance or failure to perform *professional* services, and because Endurance does not dispute that "you" refers to any entity other than Gemstar, the Court grants summary judgment that Endorsement Number 11 does not exclude coverage for Avis's claims against JD2.

### C. Scope of the Contractors Pollution Liability Coverage Part

Endurance argues that the claims against JD2 fall outside the scope of the CPL.[11] The CPL provides coverage for "property damage" only if the "damages" result from a "pollution condition." (Policy at EAIC 3508.) Endurance argues that JD2 is not entitled to coverage in the Avis Action because the "pollution condition" is not met by the allegations in the Avis FAC. (*See* Dkt. No. 33 at 12-13.) The Policy defines the "pollution condition" as follows:

> The term *pollution condition* means the discharge, dispersal, release or escape of smoke, vapors, fumes, acids, alkalis, toxic chemicals, liquids or gases, *waste* materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water which results in bodily injury or *property damage*. A continuous, related, repeated, or similar series of discharges, dispersals, releases, or escapes of pollutants at or from a site shall constitute a single pollution condition.
>
> Related *pollution conditions* are those *pollution conditions* that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.
>
> \*\*\*
>
> The term *waste* means any discarded materials of any kind, including those materials to be recycled, reconditioned, reclaimed, or disposed of.

(Policy at EAIC 3514.)

Endurance argues that "the damages sought in the Avis Action are for the repair of the rupture[d] pipe" exclusively. (Dkt. No. 33, at 13.) That reading of the Avis FAC, however,

---

[11] JD2 argues that the Court should not entertain this argument, which was made by Endurance for the first time in its motion for summary judgment. (*See* Dkt. No. 36 at 18.) "However, the Second Circuit has. . . held that '*absent prejudice to the plaintiff*, a defendant may raise [an] affirmative defense in a motion for summary judgment for the first time.'" *Nouveau Indus. Inc. v. Liberty Mut. Ins. Co.*, No. 08 Civ. 10408, 2011 WL 10901796, at *11 (S.D.N.Y. Sept. 7, 2011) (quoting *Labrinos v. Exxon Mobil Corp.*, 349 Fed. Appx. 613, 615 (2d Cir. 2009) (emphasis in original)). In this case, JD2 was not prejudiced in its ability to respond where its argument depends solely on a legal interpretation of the Avis FAC.

discounts the damages sought by Avis that include the cost of cleanup of the waste (namely, sewage) that was released as a result of the damage to the sewer line.

For example, the Avis FAC notes that "Avis seeks recovery against JD2 and/or Gemstar for any and all monies arising from the damage to the sewer line caused by JD2 and Gemstar." (Avis FAC ¶ 30.)  Avis' claims for recovery are often directed to the "extensive and complex repairs for which Avis incurred significant expense" (*id.* ¶ 36, 41, 44, 50, 55, 60), and Avis seeks "compensatory and consequential damages, in an amount to be determined at trial" (*id.* ¶ 65(a)), which is nowhere limited solely to the cost of repair of the damaged pipe.  Here, there is no dispute either that after the rupture of the sewer pipe, "water was observed" (Dkt. No. 39 ¶ 8), or that the damage caused "complaints about a sewage backup" (*id.* ¶ 1).  In this way, the Avis Action clearly implicates, at least in part, the cost to Avis for the cleanup of the waste resulting from the damages sewer line.  *See Hotel Des Artistes, Inc.*, 1994 WL 263429, at *3 ("[E]ven if only a single claim in the underlying complaint potentially falls within the indemnity coverage of the policy, the insurer must defend the entire action.").

The Court therefore grants summary judgment to JD2 that Avis's claims against it in the Avis Action are within the CPL and that Endurance had a duty to defend JD2 in the underlying Avis Action.

### D. Covenant of Good Faith

Finally, Endurance seeks summary judgment on count three of JD2's complaint, which alleges that Endurance breached the "Covenant of Good Faith and Fair Dealing/Bad Faith." (*See* Dkt. No. 1 ¶ 37-43.)  JD2 alleges that Endurance "has unreasonably denied JD2's claim; wrongfully refused to defend and/or provide defense to JD2 in the [Avis Action]; and refused and/or failed to defend JD2 when the allegations in the [Avis Action] fell within the scope of

coverage under the Policy." (*Id.* ¶ 41.) As a result, "JD2 has and continues to suffer . . . appreciable prejudice." (*Id.* ¶ 43.)

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks omitted)); *see generally Nouveau Elevator Indus., Inc. v. Cont'l Cas. Ins. Co.*, No. 05 Civ. 0813, 2006 WL 1720429, at *8 (E.D.N.Y. June 21, 2006) ("[A] host of courts have held that there is no separate, generalized tort claim for bad faith denial of insurance in New York.").

"Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC (FXDD)*, 720 F.3d 115, 125 (2d Cir. 2013). Since JD2 does not allege a tort independent of breach of contract with Endurance, the Court finds count three redundant and grants summary judgment to Endurance.

Under New York law, Endurance may also be precluded from denying coverage upon proof that, "by its conduct, [Endurance] otherwise lulled [JD2] into sleeping on its rights under the insurance contract." *Provencal, LLC v. Tower Ins. Co. of N.Y.*, 138 A.D.3d 732, 734 (N.Y. App. Div. 2d Dep't 2016) (quoting *Gilbert Frank Corp. v. Fed. Ins. Co.*, 70 N.Y.2d 966, 968 (N.Y. 1988)) (internal quotation marks omitted). But estoppel requires proof that the insured has suffered prejudice by virtue of the insurer's conduct. *Id.* The undisputed facts demonstrate that JD2 has not detrimentally relied on Endurance's coverage position or its timing as JD2 is

currently defended in the Avis Action by Ironshore and is actively litigating that action.[12] (Dkt. No. 37 ¶¶ 23, 89-90.)

### IV. Conclusion

For the foregoing reasons, JD2's motion for partial summary judgment is GRANTED. Endurance owes JD2 a duty to defend JD2 in the Avis Action. The Court hereby ORDERS Endurance to begin providing JD2's defense immediately.

The Court does not here decide what reimbursement amount is reasonable. If the parties anticipate asking the court to determine the amount for which Endurance must reimburse JD2, a motion seeking that determination must be made within thirty days of this order. Before filing any such motion, the parties must meet and confer in an attempt to agree as to amount and on any other issues the parties may seek to resolve through the Court.

Endurance's motion for partial summary judgment dismissing count three of JD2's complaint in this action is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 28 and 32.

SO ORDERED.

Dated: February 27, 2017
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[12] JD2 relies on *Kamyr, Inc. v. St. Paul Surplus Lines Ins. Co.*, 152 A.D.2d 62, 66 (N.Y. App. Div. 3d Dep't 1989), in which the court held that the insurer's "11–month delay in disclaiming coverage . . . was unreasonable and therefore was itself untimely as a matter of law." That case is distinguishable. First, in *Kamyr*, the insurance policy provided that notice "shall be given . . . as soon as practicable," yet JD2 does not point to a similar provision in the Policy here. *Id.* at 67. Second, the insurer in *Kamyr* "had no good-faith belief of their nonliability regarding the . . . incident." *Id.* But "[a]n insured may explain or excuse his delay by demonstrating a good-faith belief in nonliability so long as the belief is reasonable under the circumstances." *Cohoes Rod & Gun Club, Inc. v. Firemen's Ins. Co. of Newark, N.J.*, 134 A.D.2d 782, 783 (N.Y. App. Div. 3d Dep't 1987). Here, as discussed above, Endurance's interpretation of the professional services exception of Endorsement No. 23 is reasonable.